FILED
2011 Feb-23  PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **GAGE SMITH, a deceased minor, by and through his mother and next friend, CARA BOLTWOOD,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.: 1:11-CV-176-VEH** ) |
| **GENERAL FOAM PLASTICS CORPORATION, GP LIMITED and GREGORY LIGHTSEY,** | ) ) ) ) |
| **Defendants.** | ) |

---

**<u>MEMORANDUM OPINION</u>**

## I.     INTRODUCTION

Plaintiff Gage Smith ("Plaintiff"), a deceased minor, by and through his mother and next friend, Cara Boltwood ("Ms. Boltwood"), originally filed this wrongful death action in the Circuit Court of Talladega County, Alabama, on January 21, 2009. (Doc. 1 at 24; *see also* Doc. 7 ¶ 2). The case stems from the tragic drowning death of Plaintiff on August 7, 2008. (Doc. 7 ¶ 2).

Defendant GP Limited ("GP") removed this litigation to this court on January 18, 2011, asserting diversity under 28 U.S.C. § 1332 as the basis for federal jurisdiction. (Doc. 1 at 1). Co-Defendants General Foam Plastics Corporation

("General Foam") and Gregory Lightsey ("Mr. Lightsey") have consented to GP's removal.  (Doc. 1 ¶¶ 16-17; *id.* at 66, 69).

The court has before it Ms. Boltwood's Motion to Remand (Doc. 7) filed on February 2, 2011.  GP filed its opposition (Doc. 9) to Ms. Boltwood's Motion to Remand on February 10, 2011, and Ms. Boltwood filed her reply (Doc. 10) on February 17, 2011.  Because the court concludes that it lacks subject matter jurisdiction, Ms. Boltwood's Motion to Remand is due to be granted.

## II.   SUBJECT MATTER JURISDICTION

### A.   General Principles

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress."  *Univ. of South Alabama v. The American Tobacco Co., et al.*, 168 F.3d 405, 409 (11th Cir. 1999) (internal citations omitted).  "Accordingly, when a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power."  *Id*. (internal citations omitted).  "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."  *Id.* at 410 (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868)).

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala.*, 168 F.3d at 410.  "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Furthermore, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties.  Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951)) (internal footnotes and citations omitted).  Moreover, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that - with the express exception of civil rights cases that have been removed - orders of remand

by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review.  More specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed <u>is not reviewable on appeal or otherwise</u>, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'") (citing *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977)); Milton I. Shadur, *Traps for the Unwary in Removal and Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2418 (2007) (holding that when "the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

## B.    Diversity Jurisdiction

GP premises its removal upon this court's diversity jurisdiction.  "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000."

4

*Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)).   Therefore, removal jurisdiction based upon diversity requires:   (1) complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

### 1.    Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

### 2.    Fraudulent Joinder Principles

The dispute over satisfaction of the citizenship requirement in this case has to do with whether Ms. Boltwood fraudulently joined the non-diverse defendant, Mr. Lightsey.  "[W]hen there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant[,]" fraudulent joinder is established. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).  Relatedly, if fraudulent joinder is established, then the resident defendant is subject to dismissal as a party and its citizenship is disregarded for diversity requirement purposes. *See id.*

5

The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[1]

The standard is onerous because, absent fraudulent joinder, a plaintiff has the absolute right to choose his forum. That is, courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle. As *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents

---

[1] Under the second prong of the fraudulent joinder test, the court must determine whether the plaintiff has fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction. No issue related to the second prong exists in this case. Accordingly, the court limits its analysis to the first prong.

"exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," *see Crowe*, 113 F.3d at 1538 (citation omitted), requiring <u>clear and convincing evidence</u> and <u>particularity in pleading</u>. *Parks*, 308 F.2d at 478 (citations omitted).   Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim but must look to whether there is a <u>possibility</u> that a claim exists.   More particularly, the *Crowe* court explained the framework for analyzing fraudulent joinder as:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' *Id.* at 550.  Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' *Id.* at 548-49.  When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.  *See id.* '<u>If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to</u>

state court.' *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538 (emphasis added).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*,139 F.3d 1368, 1380-81 (11th Cir. 1998); *see also*

*Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there

is a possibility that a state court would find that the complaint states a cause of action

against any of the resident defendants, the federal court must find that the joinder was

proper and remand the case to state court.").

### 3.     Application of Fraudulent Joinder Standard

Against the foregoing backdrop, the court now turns to the application of the

fraudulent joinder standard to this case. The only specifically named defendant in

Ms. Boltwood's original complaint was Mr. Lightsey. (Doc. 1 at 24). Within this

initial pleading, Mr. Lightsey was identified as the owner of the property with an

allegedly "unguarded [and] unrestricted," swimming pool that was "eas[ily]

access[ible] to young children." (Doc. 1 at 26 ¶ 6). Ms. Boltwood asserted negligent and wanton conduct on the part of Mr. Lightsey in how he maintained the swimming pool in which Plaintiff drowned. (Doc. 1 at 26 ¶ 12).

In its opposition to remand, GP maintains that "[t]here is no question that Gregory Lightsey was named as a party defendant to defeat federal court jurisdiction in this matter." (Doc. 9 ¶ 1). More specifically, GP states:

> Plaintiff named Mr. Lightsey as a party defendant in state court and then refused to prosecute the action against him or amend the complaint to name diverse parties until passing the one-year anniversary of the complaint's filing date. It is undisputed that plaintiff did not engage Mr. Lightsey in formal discovery until January 4, 2011. See Exhibit "A." Mr. Lightsey is judgment proof in that he is uninsured, disabled and not gainfully employed. He has no meaningful assets free of lien or mortgage. Affidavit of Gregory Lightsey/Exhibit "B."

(Doc. 9 ¶ 1).

GP also argues that:

> Plaintiff has advanced no evidence in support of a contention that Mr. Lightsey knew, or should have known, trespassing children would use or attempt to use his above-ground swimming pool. Mr. Lightsey has provided an uncontroverted affidavit to the effect that he did not know, or have reason to know, that children, such as Gage Smith, would trespass onto his property. Mr. Lightsey's property is in a remote section of Talladega County, Alabama. No toddlers were known to live in the area. The only children living in the immediate area known to Mr. Lightsey were his own children who were closely supervised when in, or near, the pool. No other child had ever trespassed onto Mr. Lightsey's property. Affidavit of Gregory Lightsey/Exhibit "B."

(Doc. 9 ¶ 2).

GP cites to no authority for the proposition that either a defendant's status as being judgment proof or a delay in conducting discovery against such a purportedly judgment-proof party establishes fraudulent joinder. This court will not address such perfunctory and underdeveloped arguments. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

However, GP does reference two Supreme Court of Alabama cases in which summary judgment rulings in favor of property owners were upheld on appeal due to the defendants' lack of actual or constructive knowledge that the unsafe conditions of their properties attracted children. (Doc. 9 ¶ 3 (citing *Kennedy v. Graham*, 516 So. 2d 572 (Ala. 1987); *Slaughter ex rel. v. Moncrief*, 758 So.2d 1102 (Ala. 1999)).[2]

---

[2] The court acknowledges that GP also points to two other cases arising under laws other than that of Alabama. (Doc. 9 ¶ 3 (citing *Fields v. Henrich*, 208 S.W.3d 353 (Mo. Ct. App. 2006); *O'Clair v. Dumelle*, 735 F. Supp. 1344 (N.D. Ill), affirmed 919 F.2d 143 (7th Cir. 1990)). However, these decisions are simply without any authoritative value in the context of determining whether fraudulent joinder exists <u>under Alabama law</u>.

These efforts are unpersuasive because GP has improperly conflated the determination of Mr. Lightsey's liability on the merits with whether a cognizable wrongful death claim has been <u>asserted</u> against him.

Moreover, Ms. Boltwood responds to GP's merits-based argument that a very strong possibility exists that a triable cause of action against Mr. Lightsey already has been or can be established through the normal course of discovery:

> GP Limited references Gregory Lightsey's denial of such actual 'prior warning' in his two affidavits as 'proving' that the plaintiff can never create a question of material fact as to Gregory Lightsey's 'prior warning.'
>
> <u>Gregory Lightsey has not been cross-examined or deposed by plaintiff's counsel.</u>  Thus, his affidavit statements merely present his own, self-serving version of the facts.  <u>As significant, Gregory Lightsey's affidavit statements do not preclude a reasonable jury's factual findings that Gregory Lightsey had reason to know that trespassing children could gain access to his swimming pool and to realize the unreasonable risk of death or serious bodily harm created by this swimming pool that was readily accessible by trespassing children because there was no fence and/or because the ladder was not put up and out of reach of trespassing children</u>.  Clearly, discovery, including the deposing of Gregory Lightsey, is necessary before any court could decide whether, as a matter of law, Gregory Lightsey could never be held legally accountable in this lawsuit.

(Doc. 10 at 9-10 (emphasis added)).

Regardless, the test on fraudulent joinder is not whether Ms. Boltwood can ultimately survive summary judgment, but rather whether GP has shown <u>by clear and</u>

<u>convincing evidence</u> that Ms. Boltwood has not adequately stated an arguable or possible wrongful death claim against Mr. Lightsey, the non-diverse defendant. *See, e.g., Tillman*, 340 F.3d at 1279 (stating standard as whether there "is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants[.]").  Here, undoubtedly, Ms. Boltwood has satisfied that less demanding possibility standard and her joinder of Mr. Lightsey in this lawsuit is proper.

Therefore, Ms. Boltwood has shown the potential viability of the wrongful death claim she has asserted against Mr. Lightsey, and GP has simply not met its heavy burden by demonstrating otherwise.  *See Pacheco*, 139 F.3d at 1380 ("[T]he district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor.").  Accordingly, because GP has not established fraudulent joinder, the parties are not diverse, and this case is due to be remanded for lack of subject matter jurisdiction.

### 4.     One-Year Procedural Bar

Alternatively, Ms. Boltwood contends in her Motion to Remand that GP's removal is untimely due to the requirement that a removal premised upon diversity jurisdiction must be made no later than one year after the suit was originally brought

in state court.  *See* 28 U.S.C. § 1446(b) ("If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, <u>except that a case may not be removed on the basis of</u> <u>jurisdiction conferred by section 1332 of this title more than 1 year after</u> <u>commencement of the action</u>.") (emphasis added).

Here, GP concedes that its removal falls outside the one-year limit, but contends in its Notice of Removal that an equitable exception exists to this rule.  In support of this contention, GP cites non-binding case law from the post-*Bonner* Fifth Circuit.[3]  (Doc. 1 ¶ 3 (citing *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003)).  In its opposition to Ms. Boltwood's Motion to Remand, however, GP is starkly silent about the issue.  (*See generally* Doc. 9 (addressing merits of fraudulent joinder without responding to Ms. Boltwood's arguments and case law relating to § 1446(b)'s one-year bar against removals premised upon diversity)).

GP's failure to oppose any of the arguments raised and cases cited by Ms. Boltwood in favor of this court's application of the one-year bar against removal that

---

[3]  In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down <u>prior</u> to October 1, 1981.

are set forth in her Motion to Remand constitutes an abandonment or waiver of that issue. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

As persuasively explained by Judge Steele in *Williams v. Quality Filters, Inc.*, No. 07-0015-WS-B, 2007 WL 4219201, *1 (S.D. Ala. Nov. 27, 2007):

Courts are not obligated to read a party's mind or to construct arguments

14

that it has failed to raise and that are not reasonably presented in the court file. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ."); *see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) (declaring that a "party who aspires to oppose a . . . motion must spell out his arguments squarely and distinctly, or else forever hold his peace," as district court may ignore arguments not adequately developed by nonmovant). Clearly, "the onus is upon the parties to formulate arguments." *Resolution Trust*, 43 F.3d at 599; *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on Plaintiff's behalf."). Accordingly, plaintiff's decision not to respond to the Motion is at her peril.

*Williams*, 2007 WL 4219201, *1.  Therefore, GP's equitable exception argument is rejected due to GP's abandonment, waiver, and/or failure to properly develop it.

Moreover, from a substantive standpoint, GP also loses on § 1446(b)'s procedural bar against removal.  The Eleventh Circuit has not adopted *Tedford* or constructed any other exception to § 1446(b)'s statutorily-mandated one-year limitation.  To the contrary, the Eleventh Circuit has at least hinted in a published opinion that it would not be inclined to find the existence of an exception:

In addition, we are not convinced that Congress would find the result Windsor fears (that is, an amendment for greater damages after the one year deadline for removal) to be bad. The Commentary to the 1988 Revisions of 28 U.S.C. § 1446(b) shows that Congress knew when it passed the one year bar on removal that some plaintiffs would attempt to defeat diversity by fraudulently (and temporarily) joining a non-diverse party.  In that case, <u>as long as there is some possibility that</u>

> a non-diverse joined party could be liable in the action, there is no
> federal jurisdiction. But, under section 1446(b), if, after one year, the
> plaintiff dismisses the non-diverse defendant, the defendant cannot
> remove. So, a plaintiff could defeat jurisdiction by joining a non-diverse
> party and dismissing him after the deadline. Congress has recognized
> and accepted that, in some circumstances, plaintiff can and will
> intentionally avoid federal jurisdiction.

*Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.12 (11th Cir. 1994) (emphasis

added).[4]

Additionally, as Ms. Boltwood correctly points out in her Motion to Remand,

several district courts within the Eleventh Circuit have found § 1446(b)'s bar to be

without any exceptions.  (Doc. 7 ¶¶ 28-32 (citing various district court opinions

---

[4]  The district courts disagree about whether this language in *Burns* is dicta or binding precedent. *Compare Jones v. H&S Homes, L.L.C.*, No. 3:08-CV-571-MEF, 2008 WL 4600999, at *2 (N.D. Ala. Oct. 15, 2008) ("The Eleventh Circuit Court of Appeals does not appear to have spoken on this point in a holding, but it has offered dicta which would indicate that, unlike the Fifth Circuit, it would not be inclined to recognize such an exception.") (citing *Burns*) *with* Bouza v. Ford Motor Co., No. 07-22728-CIV, 2007 WL 4232697, at *2 (S.D. Fla. Nov. 28, 2007) ("Moreover, *Burns* is binding upon this Court and mandates remand.").  To the extent that the language in footnote 12 of *Burns* constitutes only dicta, then this court adopts it as persuasive authority in favor of alternatively remanding this case on procedural grounds.

declining to find an exception to § 1446(b)'s one-year limitation)). Finally, the court agrees with Ms. Boltwood that, even if the Eleventh Circuit were to ever adopt a *Tedford*-based exception to the one-year bar, it would be inappropriate for this court to invoke such equitable powers in this instance. (*See* Doc. 7 ¶ 33 (argument and cases cited therein)). In particular, Ms. Boltwood has reasonably explained the delay associated with her actions in this lawsuit and the circumstances of this case do not come close to rising to the egregious level of conduct that was apparent in *Tedford*.

## III.   CONCLUSION

Therefore, as explained above, the court lacks subject matter jurisdiction, and Ms. Boltwood's Motion to Remand is due to be granted. More specifically, the diversity requirement has not been satisfied. Alternatively, Ms. Boltwood's Motion to Remand is due to be granted on procedural grounds. Accordingly, an order will be entered remanding the case to the Circuit Court of Talladega County, Alabama.

**DONE** and **ORDERED** this the 23rd day of February, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

17